United States Bankruptcy Court
For The District of Puerto Rico

| | |
|---|---|
| In re COLONIAL MEDICAL MANAGEMENT CORP. | Case No. 17-06925 BKT |
| Debtor | Chapter 11 |

**DISCLOSURE STATEMENT**
**Dated September 17, 2018**

**TO THE HONORABLE COURT:**

**COMES NOW** Debtor in the above referenced Chapter 11 proceeding, **COLONIAL MEDICAL MANAGEMENT CORP**, through counsel, and respectfully presents this Disclosure Statement as follows:

I.   **INTRODUCTION**

This is the Disclosure Statement (the "Disclosure Statement") in the small business chapter 11 case of Colonial Medical Management Corp., the Debtor.  This Disclosure Statement contains information about the Debtor and describes Colonial Medical Management Corp. Plan of Reorganization (the "Plan") filed by the Debtor on September 17, 2018.   A full copy of the Plan is attached to this Disclosure Statement as Exhibit **A**.  ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed at pages 5 to 8 of this Disclosure Statement.

Debtor does not have Secured Claims as is stated in Class 1.

Priority Claims are classified in Class 2 with the Puerto Rico Department of Labor, claims 9, 10 & 11 and with the CRIM, claim no. 4 that will be paid in full on or before one year from the date of effectiveness of this plan.

Unsecured non-Priority Claims are classified in Class 3 and include a provision of payment to claim no. 12 of  Municipio de Anasco in case the objection to disallow their claim is not granted, include the unsecured portion of the priority claims of Class 2 and

the General Unsecured Creditors not included in Classes 1, 2, as allowed, approved and ordered paid by the Court, for which a proof of claim was timely filed.

Class 3 Claims - excepting the Municipio de Anasco claim no. 12 that a particular provision is included in this plan - will receive a distribution of twenty percent (20%) that will be paid starting at the thirteen (13) month of the effective date of the plan in equal monthly payments up to the sixtieth (60) month.

This Disclosure Statement is being distributed by the Debtor to all creditors who are entitled to vote under Chapter 11 and is intended to provide adequate information so that creditors may make a reasonable informed judgment to accept or reject the Plan.

**NO OTHER REPRESENTATIONS CONCERNING THE DEBTOR, ITS ASSETS, ITS PAST OF FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTAITONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR. THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. NEITHER THE DEBTOR NOR HER ATTORNEY WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCUSARY; HOWEVER, TO THE BEST OF DEBTOR'S KNOWLEDGE, SUCH INFORMATION WAS CORRECT AT THE TIME OF ITS INCLUSION HEREIN.**

This Disclosure Statement contains information that bear upon your decision to accept or reject the Plan of Reorganization of the Debtor. As such, we recommend that you read this document with care.

II. **BACKGROUND**

Debtor is a health care corporation that operates the Diagnostic and Treatment Health Care Facility located in Añasco, Puerto Rico.

Debtor has a commercial lease contract with the Municipality of Añasco – who is the owner of the building - for the operation of the Diagnostic and Treatment Facility (known

in Spanish with the acronym "CDT). The main purpose is to provide health care services to the people of Añasco and nearby towns.

Debtor started operations back in 2011 and participated in request for proposal of the Municipality of Añasco to operate the CDT because the previous operator ended operations, and health care services were needed to be provided to the population of Añasco.

Due to the negligence of the Municipality, Debtor was unable to collect charges for their services for various months from the Puerto Rico Health Plan. This caused losses to the corporation that have been claimed to the Municipality ever since. Also, when the corporation took possession of the building, the Health Department required several replacements in the structure to comply with the regulations that were the obligation of the Municipality and ever since, they have not reimbursed the expenses.

Also, Debtor was interested in the "CDT" because the Municipality of Añasco presented a marketing report to Debtors alleging that the "CDT" was servicing a lot of patients to convince them to take the contract, when resulted totally contrary and resulting in loss for the Debtor.

Back in 2014 Debtor filed a Chapter 11 Bankruptcy, case no. 14-01922, because Debtor incurred in arrears with the rent with the Municipality of Añasco, taxes authorities and other creditors. Even though, Debtor decided to request the voluntary dismissal to directly negotiate with creditors and paid the arrears with the tax authorities and restructure in order to become the operation more feasible.

But the Municipality of Añasco again started to do collection efforts and requesting the eviction of Debtor of the property and was then that Debtor decides to file the instance Bankruptcy Petition.

**Significant Events During the Bankruptcy Case**

After the filing of the Bankruptcy Petition, the Municipio de Anasco has continue the harassment, collection and eviction in the local courts. Also, the Municipio is impeding Debtor to comply with the filing of tax returns of the municipal permit and to continue the post-petition monthly rent payments that they were accepting at the beginning of the filing of the Bankruptcy Petition.

The Municipio de Anasco has been violating the automatic stay order and Debtor is still in local courts, in the Appellate Court, challenging their jurisdiction.

**Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

**Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in Exhibit **B**. The basis of the evaluation of the properties comes from appraisal reports.

The most recent post-petition operating reports filed since the commencement of the Debtor's bankruptcy case are set forth in Exhibit **C**.

III. **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A. **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B. **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless, a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | NONE | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | N/A | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court. | Estimated $20,000 legal fees | Legal Fees: $10,000 were received as retainer. The legal fees will be paid according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $1,717.00 | Paid in full at the filing of the Bankruptcy Petition and on the effective date of the Plan |
| Other administrative expenses | N/A | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $1,625 each quarter x 20 quarterly fees = $32,500 – estimated | Paid in full on the effective date of the Plan |
| TOTAL | $54,217 | |

2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| DESCRIPTION (name and type of tax) | Estimated Amount Owned | Date of Assessment | Treatment |
|---|---|---|---|
| **Puerto Rico Department of Labor - Claim 9** | $270.00 | 2014 (tax period) | Will be paid in full on or before August 2018 |
| **Puerto Rico Department of Labor - Claim 10** | $1,444.00 | 2013, 2014 (tax period) | Will be paid in full on or before August 2018 |
| **Puerto Rico Department of Labor – Claim 11** | $1,760.63 | 2014 (tax period) | Will be paid in full on or before August 2018 |
| **CRIM – Claim 4** | $1,650.02 | 2017 (tax period) | Will be paid in full on or before August 2018 |

C. **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Debtor does not have secured claims | | | |

2. *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

In the instance case there is not classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code.

3. *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 3 through which contain general unsecured claims against the Debtor:

| CLASS # | DESCRIPTION | IMPAIREMENT | TREATMENT |
|---|---|---|---|
| 3 General Unsecured Class | Municipio de Anasco claim no. 12 alleged montly rent arrears. Claim is objected. | Unpaired | If the claim is not disallowed as requested by Debtor in the objection, Debtor proposes: A) continuing the payment of the rent as per the contract and until the expiration date in 2020; B) a lump sum payment of $60,000 payable on or before six months of the effective day of the plan, C) and $2,000 monthly depending upon the amount settled starting after 30 days of payment of the lump sum or; D) A lump sum payment of $60,000 payable on or before six |

| | | | |
|---|---|---|---|
| | | | months of the effective of the plan, the consignment and/or the assignment of moneys received from the commercial spaces located in the property operated by Debtor after thirty (30) days of the payment of the lump sum and; <br> E) and $2,000 monthly depending upon the amount settled starting after 30 days of payment of the lump sum; <br> F) and an adjustment in the monthly rent to the amount of $2,500 |
| 3 | General Unsecured Class | Unpaired | Will receive 20% payable in equal monthly payments starting the 13th month as of the date of the confirmation of the plan. |

    4.    *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

In the instance case there is not a class or claim of equity interest holders.

    D.    **Means of Implementing the Plan**

        *Source of Payments*

Payments and distributions under the Plan will be funded by the income after deducting operational expenses of the services provided by the business.

### E. **Risk Factors**

The proposed Plan has the following risks:

1. That health insurers review and lower the repayments of the services provided by the Debtor.

2. The Municipio de Anasco continues with their interference in the operations and/or reorganization of Debtor.

### F. **Executory Contracts and Unexpired Leases**

The Plan, in Exhibit A, Article IV, 6.01, lists the executory contracts and unexpired lease that the Debtor will assume under the Plan.  Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article VI of the Plan – Exhibit "A" will be rejected under the Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

### G. **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

There are not anticipated tax consequences of the Plan.

### IV. **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.  These include the requirements that:  the Plan must be proposed in good faith; at

Page **9** of **15**

least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

#### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was 3/22/2018 and for government was 5/21/2018.***

#### 2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a

class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

### 4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity and should cast one ballot for each claim.

### B. **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cram down on non-accepting classes, as discussed later.

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a Αcram down@ plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not Αdiscriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a cramdown confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C. **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.

D. **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

V. **EFFECT OF CONFIRMATION OF PLAN**

A. **DISCHARGE OF DEBTOR**

Discharge. Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

B. **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided

for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C. **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI. OTHER PLAN PROVISIONS

Debtor considers the sale of the property and/or business on or before thirty (36) months. The Debtor also reserves the right to hire professionals previously authorized by the Bankruptcy Court to promote and sell the properties.

/s/ *Luis Jorge Lugo Velez*
President
Colonial Medical Management Corp., Debtor


/s/ *Ada M. Conde*, Esq.
USDCPR206209 Attorney for Debtor
Law and Justice for All, Inc.

Page **14** of **15**

# EXHIBITS

Case:17-06925-BKT11 Doc#:108 Filed:09/17/18 Entered:09/17/18 23:11:42 Desc: Main
Document Page 15 of 15